# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF KENTUCKY
# LEXINGTON DIVISION

| | |
|---|---|
| In re:<br><br>OGGUSA, Inc.<br><br>                    Debtor. | Chapter 11<br><br>Case No. 20-50133-grs<br><br>Honorable Gregory R. Schaaf |
| Oxford Restructuring Advisors LLC, solely in its capacity as Plan Administrator of the GenCanna Wind-Down Trust<br><br>                    Plaintiff,<br><br>v.<br><br>BETTER NUTRITIONALS LLC,<br><br>                    Defendant(s). | Adv. Proc. No. **Refer to Summons** |

## COMPLAINT TO AVOID AND RECOVER
## TRANSFERS AND TO DISALLOW CLAIMS

Oxford Restructuring Advisors LLC, not individually, but as plan administrator of the GenCanna Wind-Down Trust for the above-captioned bankruptcy estate files this *Complaint to Avoid and Recover Transfers and to Disallow Claims* and in support alleges upon information and belief that:

### JURISDICTION AND VENUE

1. This adversary proceedings arises out of and relates to the above-captioned bankruptcy case which was commenced under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") and is pending in United States Bankruptcy Court for the Eastern District

1

of Kentucky, Lexington Division (the "**Bankruptcy Court**") and styled as *In re OGGUSA, Inc.*, Case No. 20-50133.

2. This adversary proceeding is commenced pursuant to Rule 7001(1) of the Federal Rules of Bankruptcy Procedure (the "**Rules**") and 11 U.S.C. §§ 544, 547, 548, 549 550, and 502(d) and KRS § 378A.050 and § 378A.070.

3. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and Rule 7004.

4. Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409(a). This adversary proceeding is related to the above-captioned bankruptcy case.

5. This is a core proceeding under 28 U.S.C. § 157(b) and Plaintiff consents to entry of a final order or judgment by the Bankruptcy Court in this matter.

## THE PARTIES

6. ***Debtor***. Prior to its bankruptcy filing, OGGUSA, Inc. f/k/a GenCanna Global USA, Inc. ("**Debtor**") was a vertically integrated agriculture-technology company that cultivated hemp plants and processed them into products containing hemp-derived substances, such as cannabidiol ("**CBD**") oils and other hemp-derived cannabinoid products.

7. ***Plaintiff***. Oxford Restructuring Advisors LLC is the duly appointed plan administrator (the "**Plan Administrator**" or "**Plaintiff**") of the GenCanna Wind-Down Trust under the Confirmation Order and the Agreement, as defined below. Pursuant to 11 U.S.C. §§ 544, 547, 548, 549, 550, 1106, and 1107, the Plan Administrator is authorized and has standing to pursue this avoidance action.

8. ***Defendant***. Upon information and belief, BETTER NUTRITIONALS LLC (the "**Defendant**") was a creditor that provided goods or services to the Debtor. Upon further information and belief, at all relevant times, Defendant received wire transfer from the Debtor as

described in Exhibit A, and its principal place of business is located at 17120 S Figueroa St, Gardena, CA 90248 according to the online records maintained by the State of California. Plaintiff is informed and believes and, on that basis, alleges that Defendant is a limited liability company residing in and subject to the laws of the State of California and conducted business with Debtor in the State of Kentucky.

**PROCEDURAL BACKGROUND**

9. On January 24, 2020 (the "**Petition Date**"), certain creditors filed an involuntary bankruptcy petition for relief against Debtor in this Bankruptcy Court.

10. On February 6, 2020, Debtor consented to the involuntary petition filed against it and the Bankruptcy Court entered an order for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Case [Dkt. No. 94].

11. On February 18, 2020, the United States Trustee for Region 8 (the "**US Trustee**") appointed the Official Committee of Unsecured Creditors for GenCanna Global USA, Inc. *et al.* pursuant to 11 U.S.C. § 1102 [Dkt. No. 135].

12. On October 9, 2020, Debtor filed Debtor's *Second Amended Joint Plan of Liquidation* [Dkt. No. 1405] (as amended or modified from time to time in accordance with the terms thereof and together with all exhibits, schedules, appendices and supplements thereto, the "**Plan**") and a related disclosure statement ("**Disclosure Statement**") [Dkt. No. 1406].

13. On November 12, 2020, the Bankruptcy Court entered an order confirming the Plan and granting related relief (the "**Confirmation Order**") [Dkt. No. 1517].

14. Pursuant to the Plan and Confirmation order, on December 1, 2020, the GenCanna Wind-Down Trust Agreement (the "**Trust Agreement**") established the GenCanna Wind-Down Trust (the "**Trust**") for the benefit of the Trust's beneficiaries and named Plaintiff as the plan administrator.

15. On November 30, 2021, the Plan Administrator filed its *Motion to Establish Procedures Governing Avoidance Action Adversary Proceedings* [Dkt. No. 1173] ("**Procedures Motion**"). On December 20, 2021, the Plan Administration submitted its modified proposed order on *Procedures Governing Avoidance Action Adversary Proceedings* [Dkt. No. 1784] (the "**Procedures Order**"). On December 21, 2021 the Bankruptcy Court entered the *Order Granting Plan Administrator's Motion to Establish Procedures Governing Avoidance Action Adversary Proceedings* [Dkt. No. 1786]. These procedures apply to the instant case.

## FACTUAL BACKGROUND

16. Prior to the Petition Date, Debtor, as a hemp manufacturing company, maintained business relationships with various business entities and individuals, through which Plaintiff regularly purchased, sold, received and/or delivered goods and services.

17. The price of hemp drastically began to freefall beginning around July 2019.

18. By November of 2019, the price of hemp decreased to approximately a quarter of its high point in July 2019.

19. Despite having an EBITDA gain of $2,400,000 for the second quarter, Debtor began losing significant money in the third quarter of 2019.

20. Debtor's financial results during the third quarter of calendar 2019 was dismal, with the company losing nearly $10,000,000 on an EBITDA basis.

21. Despite a significantly improved gross profit margin during the third quarter, Debtor's selling, general and administrative costs more than doubled, largely due to increased bad debt expense, increased salaries and benefits, and increased legal and accounting expenses.

22. Specifically, despite the cost of goods being reduced in half by nearly $6,000,000, bad debt expense increased by approximately $6,000,000, salary and benefit costs jumped by approximately $1,000,000, and legal and accounting expenses jumped by nearly $1,100,000.

23. Compared to the revenue in the prior quarter, Debtor's revenue in the third quarter of $14,999,653 was a total decrease of over 37% from the $23,038,058 in the second quarter.

24. To fund its ongoing and unsustainable losses, Debtor sought additional financing in early November 2019 (*i.e.* the third amendment to the credit facility).

25. But the very week in which the third amendment was approved, a fire at Debtor's laboratory eliminated all CBD processing capability and guaranteed additional EBITDA losses during the fourth quarter, exacerbating the Debtor's inability to pay operating expenses.

26. Debtor was insolvent given that it was unable to pay its debts when they came due – an A/P Aging Summary as of December 31, 2019, shows that of Debtor's $72,722,847 in trade debt, $65,390,558 (approximately 90%) was at least 90 days old.

27. Debtor was also insolvent as it was not able to meet operational expenses – by September 30, 2019, Debtor's gross profit was approximately $8,100,000 whereas its net operating expenses were over $9,700,000.

28. At all times relevant to the allegations herein, there existed a creditor with standing to challenge the transactions set forth herein.

29. Specifically, Hemp Kentucky Growers, LLC, was a creditor of the Debtor by virtue of having filed a proof of claim in the Bankruptcy Case based on the Redemption Agreement dated October 23, 2016. (*See* Claim No. 58-1.)

30. During the ninety (90) days before and including the Petition Date, that is between October 26, 2019 and January 24, 2020 (the "**Preference Period**"), Debtor continued to operate its businesses, including the transfer of money, either by checks, cashier checks, wire transfers, ACH transfers, direct deposits or otherwise, to various entities.

31. Upon information and belief, during the course of their relationship, the Defendant and Debtor entered into agreements for the purchase of goods and/or services by Debtor from the Defendant, which are evidenced by one or more contracts, purchase orders, invoices, communications and other document (collectively, the "**Agreements**").

32. Upon further information and belief, the Agreements concerned and related to goods and/or services provided by Defendant to Debtor.

33. Pursuant to the Agreements, Debtor made payment(s) or transfer(s) of an interest of Debtor's property (the "**Transfers**") to or for the benefit of Defendant during the Preference Period through payments aggregating not less than the amount set forth on Exhibit A and attached hereto and incorporated by reference. Such details include "Transfer Amount" and "Transfer Date."

34. On or about June 25, 2021, Plaintiff, through counsel, sent a demand letter (the "**Demand Letter**") to Defendant, seeking a return of the Transfer(s). The Demand Letter indicated the potential statutory defenses available to Defendant pursuant to 11 U.S.C. § 547(c) and requested that if Defendant had evidence to support any affirmative defense, it provide this evidence so Plaintiff could review same.

35. Plaintiff also performed its own due diligence evaluation of the reasonably knowable affirmative defenses available to the Defendant.

36. On or about September 15, 2021, after obtaining no response to the Demand Letter, the Plaintiff sent a second demand letter, again seeking a return of the Transfer(s).

37. Based upon Plaintiff's review of the information, if any, provided by Defendant prior to filing this Complaint, and after performing its own due diligence evaluation of the reasonably knowable affirmative defenses to avoidance of the Transfer(s), Plaintiff has determined

Case 22-05042-grs    Doc 1    Filed 01/21/22    Entered 01/21/22 19:08:26    Desc Main
Document    Page 7 of 12

that it may avoid some or all of the Transfers even after taking into account Defendant's alleged affirmative defenses.

38. During this proceeding, Plaintiff may learn (through discovery or otherwise) of additional transfers made to Defendant during the Preference Period. Plaintiff reserves its right to amend this original Complaint to include: (i) further information regarding the Transfer(s), (ii) additional avoidable transfers, (iii) modifications of and/or revision to Defendant's name, (iv) additional defendants, and/or (v) additional causes of action, if applicable (collectively, the "**Amendments**"), that may become known to Plaintiff.

## CLAIMS FOR RELIEF

### COUNT I
**(Avoidance of Preference Period Transfers – 11 U.S.C. § 547)**

39. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein.

40. During the Preference Period, Debtor made Transfers to or for the benefit of Defendant in an aggregate amount not less than the amount set forth on Exhibit A hereto.

41. Each Transfer was made from Debtor and constituted transfers of an interest in property of Debtor.

42. Defendant was a creditor of Debtor at the time of each Transfer by virtue of supplying goods and/or services to Debtor for which Debtor was obligated to pay in accordance with the Agreements. *See* Exhibit A.

43. Each transfer was to or for the benefit of a creditor within the meaning of 11 U.S.C. § 547(b)(1) because each Transfer either reduced or fully satisfied a debt or debts then owed by Debtor to Defendant. *See* Exhibit A.

44. Each Transfer was made for, or on account of, an antecedent debt or debts owed by Debtor to Defendant before such Transfers were made, as asserted by Defendant and memorialized

7

in the Agreements, each of which constituted a "debt" or "claim" (as those terms are defined in the Bankruptcy Code) of Defendant before being paid by Debtor. *See* Exhibit A.

45. Each Transfer was made when Debtor was insolvent. Plaintiff is entitled to the presumption of insolvency for each Transfer made during the Preference Period pursuant to 11 U.S.C. § 547(f).

46. Each Transfer was made during the Preference Period, as set forth on Exhibit A.

47. As a result of each Transfer, Defendant received more than Defendant would have received if: (i) the Bankruptcy Case was under chapter 7 of the Bankruptcy Code; (ii) the Transfers had not been made; and (iii) Defendant received payments of its debts under the provisions of the Bankruptcy Code.

48. As evidenced by Debtor's bankruptcy schedules and statement of financial affairs filed in the Bankruptcy Case # 20-50133-grs, proofs of claim that have been filed to date, the Plan, the Confirmation Order, and the Disclosure Statement, Debtor's liabilities exceed its assets such that Debtor's unsecured creditors will not receive a full payout of their claims from Debtor's bankruptcy estate.

49. In accordance with the foregoing, each Transfer is avoidable pursuant to 11 U.S.C. § 547(b).

**COUNT II**
**(Avoidance of Fraudulent Conveyances – 11 U.S.C. § 548(a)(1)(B) and KRS § 378A.050)**

50. Plaintiff hereby incorporates all previous allegations as though fully set forth herein.

51. To the extent one or more of the Transfers identified on Exhibit A was not made on account of an antecedent debt, or was a prepayment for goods and/or services never received,

8

Plaintiff pleads in the alternative that Debtor did not receive reasonably equivalent value in exchange for such transfer(s) (the "**Potentially Fraudulent Transfers**"); and

   a. Debtor was insolvent as of the date of the Transfer(s), or became insolvent as a result of the Transfer(s); or

   b. Debtor was engaged, or about to engage, in business or a transaction for which any property remaining with Debtor or for whose benefit the Transfer(s) was made was an unreasonably small capital; or

   c. Debtor intended to incur, or believed it would incur, debts beyond its ability to pay upon maturity.

52. Based upon the foregoing, the Potentially Fraudulent Transfers are avoidable pursuant to 11 U.S.C. § 548(a)(1)(B) and § 544 and KRS § 378A.050.

## COUNT III
### (Avoidance of Unauthorized Postpetition Transfers – 11 U.S.C. § 549)

53. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein, to the extent they are not inconsistent with allegations in this Count.

54. This is an action pursuant to 11 U.S.C. §§ 549 and 550 to avoid and recover unauthorized postpetition transfers made from Debtor to the Defendant.

55. To the extent any unauthorized postpetition transfers were made by Debtor to the Defendant, Plaintiff reserves the right to avoid and recover such transfers pursuant to §§ 549 and 550.

## COUNT IV
### (Recovery of Avoided Transfers – 11 U.S.C. § 550 and KRS § 378A.050)

56. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein, to the extent they are not inconsistent with allegations in this Count.

57. Plaintiff is entitled to avoid the Transfer(s) pursuant to 11 U.S.C. § 547(b), any Potentially Fraudulent Transfers pursuant to § 548 or § 544 and KRS § 378A.050, and any unauthorized postpetition transfers under 11 U.S.C. § 549 (collectively, the "**Avoidable Transfers**").

58. Defendant was the initial transferee of the Avoidable Transfer(s) or the immediate or mediate transferee of such initial transferee or the person for whose benefit the Avoidable Transfer(s) were made.

59. Pursuant to 11 U.S.C. § 550(a), Plaintiff is entitled to recover from Defendant the Avoidable Transfer(s), plus interest thereon to the date of payment and the costs of this action.

### COUNT V
### (Disallowance of all Claims – 11 U.S.C. § 502(d) and (j) and KRS § 378A.00)

60. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein.

61. Defendant is a transferee of transfers avoidable under 11 U.S.C. §§ 544, 547, 548, and 549, which property is recoverable under § 550 and KRS § 378A.070.

62. Defendant has not paid the amount of the Avoidable Transfer(s), or turned over such property, for which Defendant is liable under 11 U.S.C. § 550 and KRS § 378A.070.

63. Pursuant to § 502(d), any and all claims of Defendant and/or its assignee, against Debtor's chapter 11 estate or the Trust must be disallowed until such time as Defendant pays to Plaintiff an amount equal to the aggregate amount of the Avoidable Transfer(s), plus interest thereon and costs.

64. Pursuant to § 502(j), any and all claims of Defendant, and/or its assignee, against Debtor's chapter 11 estate or the Trust previously allowed by Debtor must be reconsidered and disallowed until such time as Defendant pays to Plaintiff an amount equal to the aggregate amount of the Avoidable Transfer(s), plus interest thereon and costs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court grant it the following relief against Defendant:

A. On Counts I, I, and III, judgment in favor of Plaintiff and against Defendant, avoiding the Transfer(s) and directing Defendant to return to Plaintiff the amount of the Avoidable Transfers, pursuant to 11 U.S.C. §§ 544, 547(b), 548, 549, 550(a), and KRS §§ 378A.050 and 378A.070, plus interest from the date of demand at the maximum legal rate and to the fullest extent allowed by applicable law, together with the costs and expenses of this action including, without limitation, attorneys' fees;

B. On Count V, judgment in favor of Plaintiff and against Defendant disallowing any claims held or filed by Defendant against Debtor's chapter 11 estate or the Trust until Defendant returns the Avoidable Transfer(s) to Plaintiff pursuant to 11 U.S.C. § 502(d) and (j); and

C. Such other and further relief as this Court may deem just and proper.

Respectfully submitted,

**OXFORD RESTRUCTURING ADVISORS LLC**, as Plan Administrator of the GenCanna Wind-Down Trust

By: /s/ Aaron L. Hammer
     One of its Attorneys

Aaron L. Hammer, Esq.
*Admitted Pro Hac Vice*
ahammer@hmblaw.com
Nathan E. Delman, Esq.
*Admitted Pro Hac Vice*
ndelman@hmblaw.com
Lauren L. Stricker, Esq.
*Admitted Pro Hac Vice*
lstricker@hmblaw.com
**HORWOOD MARCUS & BERK CHARTERED**

500 W. Madison St., Ste. 3700
Chicago, Illinois 60661
Telephone:    312.606.3200
Facsimile:    312.606.3232

*-and-*

John P. Brice
jbrice@wyattfirm.com
**WYATT TARRANT & COMBS LLP**
250 West Main Street, Suite 1600
Lexington, Kentucky 40504
Telephone:    859.288.7462
Fascsimile:    859.259.0649

6206172/2/20331.002